Gremillion, J., concurs for the following reasons: |12I am not swayed by First American’s arguments regarding timing. It did not issue this title policy after considering when and how Charles’s various liens and judgments would attach to the subject property; it simply was unaware of their existence. It was First American’s obligation to discover the liens and judgments that affect the property to which they are insuring marketable title. Similarly, I am not sympathetic to First American’s technical arguments that attempt to obviate the reality that this property is not marketable. A title insurance policy exists to cover the risk that the insured property owner does not have an unmarketable title, subject to the encumbrances of its former owners. Accordingly, I must agree with the majority. That having been said, I can only concur with my colleagues for two reasons. First, the majority finds that: ‘... since “Insured Claimant” refers to the insured claimant who actually claims loss or damages, Charles would not be considered the “Insured Claimant” here as he is not claiming loss or damage. We find this exclusion is not applicable herein.’ | ^This finding creates an incentive for abuse of the donative process bétween co-buyers. An encumbered co-buyer simply donates his portion of the property to other co-buyers, allowing for a convenient insurance claim for the remaining “insured claimant.” Secondly, and specifically to this case, had Lydia bought this property without Charles, she would be the only owner as she is today. But, because Charles stepped in as co-buyer and then stepped out almost immediately as donor, Lydia gets the same ownership of the same property at the same price, and gets to make a claim on this insurance policy. I can see no good reason for this contrivance. The majority points out in the first line of the opinion that Charles and Lydia are part of the same family, but proceeds as though that fact was irrelevant. I cannot conclude that Lydia was unaware of the existence of not one or two, but ten, encumbrances against Charles. And, if she did not know, she could have simply asked her brother-in-law about his fitness to be a co-owner of immoveable property. Nevertheless, it is true that First American failed to offer any proof of Lydia’s knowledge of Charles’s indebtedness. Thus, even though Lydia was better-positioned to avoid this problem, I am constrained by the policy language and the record before me. Therefore, I concur.